# FRANK PHILLIPS

## *vs.*

## STATE OF MARYLAND.

*Liquor laws: Baltimore City; license for bottlers; section* **688**
*of Article 4 of the Public Local Laws.*

Section 688 of Article 4 of the Code of Public Local Laws
(amended by Ch. 196 of the Acts of 1908), providing for a
license of $160.00 for every person, co-partnership or corpora-
tion, conducting a bottling business, and selling fermented
liquors only, does not apply to a dealer who pays a brewery
company to bottle for him beer which he purchased from the
brewery.                                          pp. 396, 397

The statute was intended to apply to cases where the licensee
conducts a bottling business of his own, and sells only fermented
liquors which he bottles himself.                      p. 396

The fact that such dealer is himself a bottler of soft drinks
does not entitle him to sell beer under the special license for
bottlers of fermented liquors.                        p. 397

*Decided June 24th, 1914.*

Appeal from the Criminal Court of Baltimore City.
(AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*Thomas J. Mason*, for the appellant.

*Lindsay C. Spencer, Assistant State's Attorney,* and *Edgar Allan Poe, Attorney-General,* (with whom were *Harry W. Nice, Assistant State's Attorney,* and *William F. Broening, State's Attorney for Baltimore City*, on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant was convicted of selling fermented lager beer in violation of the statute applicable to Baltimore City relating to the sales of intoxicating liquors. The material question for our consideration is the construction of the provisions of Article 4 of the Code of Public Local Laws, in reference to a license "to conduct a bottling business by selling fermented liquors only, and in quantities or packages not less than twelve pint bottles." There are six counts in the indictment, and the traverser filed a special plea to the indictment and to each count thereof. That plea was demurred to by the State and, the demurrer having been sustained, a plea of not guilty was entered, and an agreed statement of facts was filed. As the plea and the agreed statement were intended to raise the same question, we will not discuss them separately or pass on any purely technical points as to the statements in them.

Section 667 of Article 4 of the Code of Public Local Laws provides that:

> "No person shall sell, offer for sale or keep for sale in the City of Baltimore any intoxicating liquors except as hereinafter provided; but this shall not apply

to sales made by a person under a provision of law
requiring him to sell personal property, nor to sales of
liquors by wholesale, nor to sales by the maker, brewer,
or distiller thereof, nor to sales by bottlers of fermented
liquors not to be drunk on the premises; save and
except as hereinafter specially provided in reference
to wholesale dealers and jobbers, brewers, distillers and
bottlers in section 688, wherein the rights and duties
of said classes of persons are set forth and defined."

A Board of Liquor License Commissioners for Baltimore
City is provided for, and Section 671 provides that no
licenses to sell intoxicating liquors other than by wholesale
traders, distillers, brewers, rectifiers and bottlers of fer-
mented liquors shall be granted in the city of Baltimore ex-
cept by said Board. Various provisions and regulations are
then prescribed in reference to licenses to be granted by the
Board, and section 688 (as amended by Ch. 196 of the Acts of
1908, see p. 620 of Acts) provides that distillers, brewers and
wholesale dealers or jobbers, other than wholesale druggists,
shall be allowed to sell spirituous liquors in quantities of not
less than one pint each, and fermented liquors in packages
of not less than two dozen pint bottles, or twelve quarts, each,
but in no case to be drunk on the premises; that distillers
and brewers shall require no licenses, and wholesale dealers
and jobbers (other than wholesale druggists) shall be en-
titled to receive a license upon applying to the Clerk of the
Court of Common Pleas, and paying the sums named, which
sum after May 1st, 1910, was one thousand dollars *per
annum.* That section then provides: "But any person, co-
partnership, or corporation (other than brewers, who, as
hereinbefore stated, require no license) may be licensed to
conduct a bottling business by selling fermented liquors only,
and in quantities or packages not less than twelve pint bot-
tles, by applying direct to the Clerk of the Court of Common
Pleas and paying him" the sums named, which sum was
$160.00 per annum after May 1st, 1910.

On May 1st, 1913, a license was granted by the Clerk of the Court of Common Pleas, "to Frank Phillips, of 1805 E. Biddle St., Bottler of Fermented Liquors, to sell fermented liquors only and in quantities or packages not less than twelve pint bottles." On May 1st, 1913, the traverser was, and had been for a long time before then, a bottler of soft drinks, such as sarsaparilla, soda, ginger ale, etc., with a bottling plant at 1805 E. Biddle Street, and prior to May 1st, 1913, he had bottled beer at that bottling plant but had not done so since then. The beer sold by him as charged in the indictment was bottled at the bottling plant of the George Gunther, Junior, Brewing Company in Highlandtown, Baltimore County. He had a contract with that company as follows:

> "Whereas, the George Gunther, Junior, Brewing Company, a body corporate of Baltimore County, has erected at its brewery a plant for the bottling of beer and fermented liquors for the use of licensed bottlers of fermented liquors. Now this agreement witnesseth: That I, Frank Phillips, being a licensed bottler of Baltimore City, in consideration of the premises and one dollars ($1.00), in hand paid, do hereby contract with the said George Gunther, Junior, Brewing Company of Baltimore County for the use of said bottling plant for the purpose of bottling beer and fermented liquor sold by me in Baltimore City.
>
> "It is further agreed, that I shall purchase the beer of the said brewing company, paying therefor five dollars and forty cents ($5.40) per barrel, from the vat, and shall further pay the said Brewing Company two and one-half cents (2½c.) per dozen bottles for the use of the said bottling plant in bottling said beer."

That contract was signed and sealed by Frank Phillips, and beneath his signature was an endorsement of the acceptance of the contract by the company.

The agreed statement shows that the traverser sold seventy-two pints of fermented lager beer to one person, and twenty-

one pints to another on June 28th, 1913, and for his right
to make the sales he relies on the license and contract re-
ferred to above.

Attorneys for both sides stated that they have found no
decision exactly in point and it was conceded that the case
must depend upon the construction of the statute. It seems
to us that such construction is perfectly plain and simple.
The license itself on which the traverser relied describes him
as a "bottler of fermented liquors," but we cannot under-
stand how it can be said that under the agreed statement of
facts he was such within the meaning of the statute. That
statement says: "The beer sold by him as charged in the
indictment in this cause was bottled at the bottling plant of
the George Gunther, Jr., Brewing Company in Hagerstown,
Baltimore County," and that he has not bottled any beer
at his bottling plant since the first day of May, 1913. Under
his contract with the brewing company, he agreed to pay the
company $5.40 per barrel for the beer and 2½ cents per
dozen bottles for the use of the bottling plant in bottling said
beer. The record does not show how many dozen bottles
there are in a barrel of beer, but if we assume for illustration
that there are 20, then the traverser contracted to pay $5.40
for the beer and 50 cents for bottling it. What possible
difference would it have made if he had simply agreed to
pay $5.90 for the twenty dozen bottles of beer? If he simply
purchased the beer in bottles at that rate, it could hardly be
contended that he could have sold it under a bottler's license,
and yet it is claimed that simply because he paid the Brew-
ing Company so much per barrel for the beer and so much
per dozen for bottling it, he is only required to pay $160.00
per annum for his license. Anyone buying the same quantity
of bottled beer and selling it would have been required to
pay $1,000 for his license, and of course the Legislature
never intended such a distinction to be made between the
ordinary purchaser and one such as the traverser was under
this contract.

The statute exempts brewers from taking out licenses, and if the construction contended for on the part of the appellant be adopted, a brewer could make contracts such as this with dealers all over the city and each of them could sell the beer of such brewer on paying $160.00 for the license, while a dealer not making such a contract would have to pay $1,000. It is true that under the $1,000 license the dealer can sell other liquors, but it is equally true that one who has no such contract as the plaintiff has cannot sell beer alone unless he gets a license for which he must pay $1,000, while the plaintiff could sell it upon paying $160. each year for his license, if his contention be sustained.

Section 667 speaks of "sales by bottlers of fermented liquors"—not sales by those who purchase from bottlers of fermented liquors—and section 688 provides that any person, co-partnership or corporation, "may be licensed *to conduct a bottling business* by selling fermented liquors only," etc. The traverser did not conduct the business of bottling fermented liquors to be sold in quantities or packages of not less than twelve pint bottles, but the Brewing Company conducted the bottling business and the traverser was simply a purchaser from that company. If the traverser was only required to pay $160 for his business under the circumstances mentioned, then any person might sell fermented liquors under a similar license if he bought the beer from any brewer, and paid him for bottling it, whether the brewery was in or out of this State, for inasmuch as the statute exempts brewers from taking out licenses, what difference could it make whether the brewery was located in or out of this State? The statute was manifestly intended to apply to cases where the licensee conducts a bottling business of his own, and only sells fermented liquors which he bottles himself. As the brewer who makes the beer is exempted from taking out a license in order to sell it, the Legislature apparently deemed it proper to permit one engaged in bottling it to sell it under a license at a much less rate than would be

charged for most licenses under the liquor laws of Baltimore City,—probably owing to the fact that it was supposed that in order to bottle the liquors properly a more or less expensive plant would be required. Whatever the reasons were, however, it is clear that the Legislature never intended not only to exempt brewers from paying for any license, but to enable them to reduce the license of their customers from $1,000 to $160 by entering into a contract with them to bottle the beer at so much per dozen bottles.

Of course the fact that the traverser was a bottler of soft drinks did not relieve him, for without stating other reasons, the statute providing for the license in question only applies to the sale of fermented liquors bottled in the plant of the licensee and not to a sale of those bottled as this beer was.

Without further prolonging this opinion, the reasons given are sufficient to sustain the conclusion reached by us, as shown by the *per curiam* order heretofore filed, by which we affirmed the judgment and required the appellant to pay the costs.

*Judgment affirmed, the appellant to pay the costs.*